UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GENESETT CORPORATION,<br>*as Trustee of the Genesett Trust*<br>*Dated 10/23/01, on behalf of itself*<br>*and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>SUN LIFE ASSURANCE COMPANY<br>OF CANADA,<br><br>Defendant. | Civil Action No. 23-CV-12276-AK |

## MEMORANDUM AND ORDER ON DEFENDANT SUN LIFE'S MOTION FOR SUMMARY JUDGMENT

**ANGEL KELLEY, D.J.**

This dispute requires this Court to construe a provision of a life insurance policy. Plaintiff Genesett Corporation ("Plaintiff" or "Genesett") brings this suit on behalf of itself and all other similarly situated owners of certain life insurance policies against Defendant Sun Life Assurance Company of Canada ("Defendant" or "Sun Life"). Defendant filed a Motion for Summary Judgment. [Dkt. 74]. For reasons stated below, Defendant's Motion for Summary Judgment is **DENIED.**

1

I.    **BACKGROUND**

This case is about a universal life insurance policy. [Dkt. 89 ¶ 1].[1] Sun Life issued the policy in 1998 to The Wilstein Trust (insuring the lives of David and Susan Wilstein) with an effective date of September 7, 1998, and an initial face amount of $5 million. [Id. ¶¶ 2, 14]. The policy does not have a fixed premium payment. [Id. ¶ 3]. When applying for such a policy, the applicant chooses a planned premium, which sets the amount and timing they would make if they choose to pay in regular amounts at regular intervals. [Id.]. However, policyowners are not obliged to make the payments at the designated time or at the designated amount. Rather, the policyowner has the flexibility to set the amount and timing of the payments, including not making a payment. [Id.]. The policy states that the planned periodic premium is $149,000. [Id. ¶ 15]. The amount and timing of the premium payments will affect how long the policy may last. [Id. ¶ 4].

Payments from policyowners contribute to an "account value" and there are deductions every month from the policy to pay ongoing charges. [Id. ¶ 5]. "Account value" is defined as "the accumulation of premiums paid, with interest added and deduction made in accordance with the terms of this policy." [Dkt. 77-1 at 9]. There is also a "cash surrender value," which is the "net cash value decreased by any policy debt." [Id.]. The policy's monthly anniversary day is the monthly anniversary of the date that the policy became effective, which is September 7th, 1998. [Dkt. 89 ¶¶ 6, 7]. The policy stays in force so long as its cash surrender value is sufficient to cover the policy's monthly deduction on the monthly anniversary date. [Id. ¶ 8]. Sun Life sends a notice if additional premium is required to keep the policy from lapsing, but the parties dispute if Sun Life is required to send the notice. [Id. ¶ 9]. The policy includes a lapse

---

[1] The Court pulls the following undisputed facts from the parties' Statement of Material Facts and Responses. [Dkt. 89].

protection provision, which states that "if on the Policy's Monthly Anniversary Day the Cash Surrender Value is insufficient to cover the Monthly Deduction, the Policy will not lapse if the Policy's minimum premium test is satisfied." [Id. ¶ 10]. The Lapse Protection provision provides that the policy will not terminate as long as on any monthly anniversary part (a) does not exceed (b), where:

a. (a) is the applicable minimum premium shown in the table of lapse protection minimum premiums in section 2B accumulated for the number of months this policy has been in force at an interest rate of .327374% per month, compounded monthly (4% per year, compounded yearly); and

b. (b) is the amount of premiums paid for this policy accumulated at an interest rate of .327374% per month, compounded monthly (4% per year, compounded yearly) less partial surrenders accumulated at the same rate of interest compounded in the same way. [Id. at ¶ 11].

The provision also states that "the applicable minimum premium is the premium shown in the table of lapse protection minimum premiums in section 2B for the policy year in which the Monthly Anniversary Day on which the test occurs." [Id.]. The policy included a "table of lapse protection minimum premiums," which listed the applicable "minimum monthly premium" for 30 years. [Dkt. 77-1 at 8]. According to the table, the minimum monthly premium for the first five years was $7,030.05 and $11,526.87 for the next 14 years. [Id.]. Every year thereafter represented gradual increases. [Id.]. The table lists the monthly minimum premium payments for 30 policy years needed to keep the lapse protection feature active. [Id.]. The Wilstein Trust sold the policy in 2004 to Plaintiff. [Dkt. 89 ¶ 16].

II.   **LEGAL STANDARD**

The purpose of summary judgment is to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Mesnick v. Gen. Elec. Co., 950 F.2d 816,

3

822 (1st Cir. 1991) (citing Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)). Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The parties agree that California law applies to this case.  [Dkt. 75 at 9 n.8].  In California, "interpretation of an insurance policy is a question of law and follows the general rules of contract interpretation . . . [and] the mutual intention of the parties at the time the contract is formed governs interpretation."  TRB Invs., Inc. v. Fireman's Fund Ins. Co., 40 Cal. 4th 19, 27 (2006)(internal citation omitted).  If possible, intent is drawn "solely from the written provisions of the contract.  The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense' . . . controls judicial interpretation."  Id. (internal citation omitted); see also New Hampshire Ins. Co. v. R.L. Chaides Construction Co., 847 F.Supp. 1452, 1455 (N.D. Cal. 1994) (contract interpretation is particularly amenable to summary judgement because it raises questions of law).

To grant summary judgment on a contract interpretation issue, the movant must prove their interpretation is the only reasonable interpretation.  MacKinnon v. Truck Ins. Exch., 31 Cal. 4th 635, 655 (2003) (citing Waller v. Truck Ins. Exchange, Inc. 11 Cal.4th 1, 18, 44 (1995)). The Court must "look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it."  Waller, 11 Cal. 4th at 18.  A provision is ambiguous when it is capable of at least two constructions by a reasonable person—not when the parties merely disagree about its meaning.  Jones v. IDS Prop. Cas. Ins. Co., 27 Cal. App. 5th 625, 636-637 (2018).  Extrinsic evidence can be introduced to clarify ambiguous provisions.  See F.B.T. Prods., LLC v. Aftermath Records, 827 F. Supp. 2d 1092, 1102 (C.D. Cal. 2011) (citation

4

omitted). When there is no material dispute in the evidence introduced by the parties, the Court must interpret the contract as a matter of law. Skolnik v. Lehman Bros. Bank, FSB, No. SACV1201197JGBANX, 2014 WL 12561049, at *7 (C.D. Cal. Mar. 24, 2014). However, if a dispute exists, including with the parties' mutual intent, summary judgment is not appropriate and the jury must resolve the factual conflict. DeForge Mar. Towing, LLC v. Alaska Logistics, LLC, 591 F. Supp. 3d 939, 948 (W.D. Wash. 2022); see also F.B.T. Prods., LLC, 827 F. Supp. 2d at 1102 (if there is a conflict in extrinsic evidence, a jury must resolve this issue of fact).

## III. DISCUSSION

Sun Life seeks summary judgment on its interpretation of part (a) of the minimum premium test. In other words, Sun Life seeks a ruling that its interpretation of the contract is the only reasonable interpretation given the evidentiary support. Genesett provides an interpretation of its own. California courts have established a two-step process for interpreting contracts, including insurance policies. Centerline Hous. P'ship v. Palm Communities, No. 821CV00107JVSJDEX, 2022 WL 247951, at *5 (C.D. Cal. Jan. 12, 2022). First, the Court must determine whether the contract is ambiguous from its express words. Id. The Court may properly admit extrinsic evidence to construe a contract when its language is not clear and explicit. Id. If the extrinsic evidence does not present a conflict, then the contract interpretation becomes a matter of law. Id. If a dispute exists, then the issue is one for a jury. Both parties have submitted extrinsic evidence in support of their respective interpretations. This Court has considered this evidence, in addition to considering the express language of the policy.

### A. Express Language of the Contract

While the Court examines the policy as a whole, it gives part (a) of the minimum premium test careful evaluation as it is the section that is in dispute between the parties. See

Schertzer v. Bank of Am., NA, 109 F.4th 1200, 1208 (9th Cir. 2024). Sun Life argues that "the correct interpretation . . . requires one to: (i) refer to the Table to obtain 'the applicable minimum premium,' which the Policy explicitly defines to mean 'the premium shown in the [Table] for the policy year in which the Monthly Anniversary Day on which we apply the test occurs'; and (ii) multiply that applicable minimum premium by the number of months the policy has been in force, at the specified interest rate." [Dkt. 75 at 17]. In support of its interpretation, Sun Life points to the singular use of "premium," indicating that the calculation must only use one value. [Id. at 16-17].

Genesett, however, argues that part (a) of the minimum premium test requires multiple, *different* premiums. It contends the ordinary meaning of "accumulate" supports its interpretation. [Dkt. 83-1 at 12]. Additionally, it argues that the ordinary meaning of "accumulate" "means piled up, little by little" and not Sun Life's interpretation of "to multiply." [Id. at 13]. Genesett further argues that, had the policy meant to use "multiply," the policy would have clearly stated so. [Id. at 14]. Lastly, Genesett also points to the spikes in premiums that would result as a result of Defendant's interpretation and the impact on interest, [Dkt. 83-1 at 11, 18], to which Defendant argues are both irrelevant. The Court finds that the disputed provision of the minimum premium test is ambiguous and susceptible to both parties' interpretations. The provision's plain language does not clearly explain how to calculate the applicable monthly premium. Thus, the Court is required to consult the policy as a whole and extrinsic evidence to effectuate the parties' discerned intent.

### B. Contract as a Whole

Before turning to the extrinsic evidence, the Court considers the policy as a whole in order to resolve the ambiguity. Genesett points to other areas of the policy to refute Defendant's interpretation. First, Genesett points to Section 6 of the Policy, which states:

> You may also make a premium payment, on the due date of the planned periodic premium, which is in excess of the planned periodic premium. However, the sum of such excess plus any unscheduled premium payments ***may not exceed $100,000 in any one policy year***. (emphasis added) [Dkt. 77-1 at 12].

Genesett argues that it would not even be able to pay the necessary premiums per Sun Life's own interpretation. While the Court agrees that it is unusual that Defendant's position is that Plaintiff should pay premiums which exceed the annual limit, it does not entirely dispose of Sun Life's interpretation. The very next line in that section states, "We will accept payments in excess of $100,000 only as necessary to keep this policy in force." [Id.]. It serves no purpose to plod this argument. Because policyowners can still validly make payments in excess of the limit, this section does not render Sun Life's interpretation inexact, as Plaintiff indicates.

Plaintiff also points to other parts of the policy to support its interpretation of the provision language. For example, Plaintiff discusses Section 8, Computation of Values, to suggest that the policy uses singular and plural terms interchangeably when referring to a variable rate. [See e.g., Dkt. 77-1 at 16]. ("This monthly cost of insurance *rate* will be determined by us from time to time based on our expectations . . . . However, these monthly cost of insurance *rates* will never be greater than those shown in the Table[.]"). Plaintiff contends that this dispatches Defendant's argument that the singular use of "premium" indicates that only one premium should be used in the test. Plaintiff seems to suggest that "singulars normally include plurals" and vice versa. Friends of the Inyo v. United States Forest Serv., 103 F.4th 543, 554 (9th Cir. 2024). However, there are several instances in the policy that denote a word is

plural by using "(s)." [See, e.g., Dkt. 77-1 at 17] ("If the Policy Proceeds become payable during the grace period, then any cost of insurance, monthly expense charge and monthly face amount *charge(s)* due us will be deducted from the amount payable by us.") (emphasis added). Thus, it does not seem that this canon applies. However, the Court is also not convinced that the use of "premium" in the singular indicates that the test requires only one premium to be used in the test. The "applicable minimum premium" could reasonably be interpreted as meaning the applicable premium for that year.

### C. Extrinsic Evidence

Extrinsic evidence is properly considered "to construe a contract only when its language is ambiguous." F.B.T. Prods., LLC, 827 F. Supp. 2d at 1102 (citation omitted). Its purpose, essentially, is to infuse meaning into the contract and to rid it of any infirmities. If there is no material dispute in the extrinsic evidence, the Court can interpret the contract as a matter of law. Skolnik, 2014 WL 12561049 at *7. However, if there is a material dispute, the jury must resolve the factual conflict. Id. A dispute of "parties' objective manifestations of intent" of a contract is a factual conflict resolved by a jury. Deakins Holding PTE Ltd. v. NewNet Inv. Grp. LLC, No. 2:14-CV-02036-CAS, 2015 WL 468972, at *11 (C.D. Cal. Feb. 4, 2015).

Documents offered by both parties reveal that Genesett, and previously the Wilstein Trust, routinely failed to meet the annual premiums to keep the lapse protection feature active. [See, e.g. Dkts. 77-6; 77-8; 77-22; and 77-23]. Nevertheless, the Court does not find this is sufficient evidentiary support to compel summary judgment for the Defendant. The fact that Plaintiff did not make payments for several years does not answer the relevant question that is before this Court: whether Defendant's interpretation of the minimum premium test is the only reasonable interpretation. Had Genesett (or previously the Wilstein Trust) made regular

payments, it could have been course of performance evidence that illuminated the meaning of the minimum premium test. However, that is not the case here since there is no evidence suggesting course of conduct occurred between the parties. See Phoenix Techs. Ltd. v. VMware, Inc., No. 15-CV-01414-HSG, 2017 WL 1289863, at *5 (N.D. Cal. Jan. 6, 2017) (holding there was not sufficient course of conduct evidence to compel summary judgment for the defendant).

Here, extrinsic evidence exists to buttress Plaintiff's interpretation of the minimum premium test. First, the Court finds the Sun Survivorship Product Guide (2001) helpful. The guide, which seems to assist policyowners in understanding universal life policies, states, "The cumulative nature of this test adds even more flexibility in the form of prepayment and catch-up provisions." [Dkt. 85-8 at 12]. It adds that "[a]ny missed premiums can be made up at any time by paying the missed premiums at 5% interest." [Id. at 13]. Meriam-Webster defines "cumulative" as "increasing by successive additions."[2] This sentence suggests that, to "catch up," a policyowner can add previous missed payments. Defendant's argument that "cumulative" also means multiplication founders as it is not supported by their own guide or the plain meaning of the word. While this product guide does not directly interpret Plaintiff's policy, it does provide cogent guidance on how to understand similar flexible policies.

Genesett also offers a letter from Sun Life that admits they provided inconsistent information. [Dkt. 85-17] ("Our representatives had confirmed that the policy's LP was not in place when speaking with Christina Shook, the Trustee's representative, but had provided different dates when the LP last applied. We apologize for this inconsistency"). This is relevant because Genesett alleges that Sun Life has been providing inconsistent information, not only

---

[2] "Cumulative," Merriam-Webster.com, https://www.merriam-webster.com/dictionary/cumulative#:~:text=%3A%20made%20up%20of%20accumulated%20parts,cumulative%20evidence (last visited February 28, 2025).

regarding how to calculate the test, but also regarding when the policy's minimum premium test was satisfied. [Dkt. 83 at 9]. Moreover, Genesett points to many emails and documents that show many individuals, both inside and outside of Genesett, understood the lapse protection feature to function differently than Sun Life. For example, Mills Potoczak, a former trustee, sent Sun Life a letter in 2021 expressing concerns about the requested payments. [Dkt. 77- 37]. An email from Mills Potoczak to Sun Life in 2022 states, "I thought I understood the policy as for almost a year, we were receiving lapse warning notices about every two months and the cost of insurance was being deducted from the cash surrender value in the policy. The pattern seems to have changed and I was hoping you could investigate it and give an explanation . . . . Any information would be greatly appreciated in understanding how this policy is working." [Dkt. 85-19].

Lastly, internal communication from Genesett indicates an independent firm also did not share Sun Life' interpretation of the minimum premium test. Derek O'Brien, CEO and President of Genesett, emailed an investor the following on December 16, 2020:

> This additional premium was a surprise to everyone. The premiums last summer were calculated by the Trustee, Mills Potoczak & Co. (MPC), based off the annual premium notice they received from Sun Life. Then suddenly, they receive a lapse notice in November with this much higher premium amount required. As you saw in the material emailed to you, MPC has an independent firm working with them to review this whole situation, and they standby the calculations of last summer. Everyone is baffled by Sun Life's sudden higher premium charge. As my letter explained, MPC and the independent firm have done their analysis, and they are challenging Sun Life on this, as they believe Sun Life is wrong. The issue is still in processing with Sun Life, and MPC is checking in with them regularly. In the meantime, the advice from MPC and the consulting firm is to pay this monthly premium so that Sun Life cannot lapse this policy. This allows more time to debate this situation with Sun Life and prove MPC's position. [Dkt. 77-34].

This communication suggests that Genesett identified a divergence from Sun Life in December 2020 (almost three years before the Complaint was filed) and that there is an alleged independent

firm that shares this understanding. The Court finds that Plaintiff has provided sufficient evidentiary support of a contrary intent.

## IV.   CONCLUSION

This Court need not go any further. The Court finds that the test is susceptible to both parties' interpretations. The extrinsic evidence submitted does not clearly explain the meaning of the minimum premium test or demystify the parties' intent when the policy was created. See Watson v. Eaton Elec. Inc., No. 206-CV-00277-KJD-GWF, 2008 WL 4527693, at *5 (D. Nev. Sept. 29, 2008). This poses a question of fact that must be resolved by a jury. See Skolnik, 2014 WL 12561049, at *8 ("Because the conflicting extrinsic evidence supports different interpretations . . . , this poses a question of fact not amenable to summary judgment."). While the jury cannot interpret the express words of the policy, it is the jury's role to evaluate the credibility of the extrinsic evidence and ascertain the intent of the parties when the policy was executed. See First City Pac., Inc. v. Home Depot, U.S.A., Inc., No. CV129401FMOMRWX, 2014 WL 12638455, at *2 (C.D. Cal. Sept. 24, 2014); see also City of Hope Nat'l Med. Ctr. v. Genentech, Inc., 43 Cal. 4th 375, 395 (2008). Viewing the extrinsic evidence in the light most favorable to Genesett, there exists a genuine dispute of material fact regarding the correct interpretation of the premium test. Accordingly, this Court cannot grant Sun Life's Motion for Summary Judgment. For the foregoing reasons, Defendant's Motion for Summary Judgment [Dkt. 74] is **DENIED**.

      **SO ORDERED.**

Dated: February 28, 2025                              /s/ Angel Kelley
                                                                               Hon. Angel Kelley
                                                                               United States District Judge